**PROSPECT PURCHASING CO., INC., Plaintiff,**

v.

**WEBER, LIPSHIE & CO., Defendant.**

**WEBER, LIPSHIE & CO., Third–Party Plaintiff,**

v.

**PROSPECT INDUSTRIES CORP., Third–Party Defendant.**

Civ. A. No. 85–4279.

United States District Court, D. New Jersey.

Sept. 8, 1988.

Brenner, Saltzman, Wallman & Goldman by David R. Schaefer, John H. Beers, New Haven, Conn., for plaintiff.

Townley & Updike by James P. O'Neill, David O. Simon, New York City, for defendant/third-party plaintiff.

## SUPERCEDING SUPPLEMENTAL OPINION

WOLIN, District Judge.

This opinion supplements and modifies this Court's opinion delivered on the record following oral argument for defendant's motion to dismiss on July 25, 1988. The issue facing the Court is whether plaintiff's federal securities claims brought pursuant to section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5, are barred by the federal one-year statute of limitations borrowed pursuant to the Third Circuit's opinion in *In re Data Access Systems Securities Litigation*, 843 F.2d 1537, Fed.Sec.L.Rptr. (CCH) ¶ 93, 704 (3d Cir.1988) (in banc). For the following reasons, this Court finds that retroactive application of the *Data Access* opinion appropriately bars plaintiff's federal securities action. However, this Court will not dismiss plaintiff's pendent state law negligence claims.

### I. BACKGROUND

The facts of this case, although complicated, may be greatly simplified for purposes of this motion. Prospect Industries Corp. (the "Company"), the third-party defendant herein, was involved in the manufacture and sale of steel drums and pails. The principal shareholders of the Company (approximately 17% of which has been publicly owned since 1969) prior to the transaction which is the subject of this lawsuit, were Milton Gold and his brother Sol Gold (the "Golds"), and Karel Sokoloff and his brother Abraham Sokoloff (the "Sokoloffs").

On September 3, 1982, the brothers Daniel and Nathan Milikowsky consummated a deal whereby the recently created Prospect Purchasing Co., Inc. ("Purchasing Co."), the plaintiff herein, would acquire the 83% of the Company's stock which was owned by the Golds and the Sokoloffs.[1] Upon

---

1. Although not significant for purposes of this motion, it appears to be unclear whether the stock of Purchasing Co. itself is directly owned by the Milikowsky brothers or if instead it is owned by Jordan International Co. ("Jordan") (a vendor of raw materials for steel manufactur-

acquisition of the Company, it appears that the Milikowskys and William Kane, whom the Milikowskys had just installed as President of the Company, quickly discovered that certain aspects of the Company appeared to have been overvalued.[2] Upon transmittal of the suspected fraud to the Golds and Sokoloffs during a meeting between the buyers and sellers on or about December 9, 1982, the terms of the deal were amended effective December 28, 1982.[3]

In spite of mounting losses, the Milikowskys continued to operate the Company throughout 1983. In 1984, however, Prospect Industries Co. was liquidated piecemeal. Finally, in 1985, the Milikowskys attempted to sell the Company's manufacturing plant. Whereupon in the Spring of 1985, the Milikowskys discovered that the plant's grounds were contaminated with waste products and that the New Jersey Department of Environmental Protection would prohibit the sale of the plant until the site was cleaned up.

In August of 1985, the Milikowskys, on behalf of Jordan International Co., Inc. and Purchasing Co., caused this action to be filed in federal district court. The complaint contained allegations of negligence, securities fraud and aiding and abetting of securities fraud by Weber, Lipshie in conducting an audit of the 1981 financial statements of the Company. Jurisdiction was alleged to exist by virtue of diversity of citizenship, section 10(b) of the 1934 Securities and Exchange Act and principles of pendent jurisdiction.

In October 1987, plaintiffs Purchasing Co. and Jordan sought leave to amend the complaint to include the same federal and common law allegations with respect to the 1979 and 1980 audits of the Company's financial statements performed by Weber, Lipshie.[4] Weber, Lipshie opposed the motion on several grounds, including the ground that Jordan was not a proper party to this action. In a decision dated November 4, 1987, Magistrate Hedges granted Purchasing Co.'s motion to amend the complaint, extended the time within which to complete pre-trial discovery and dismissed Jordan from the action. This order was appealed to Judge Lechner who, on December 14, 1987, affirmed the order with respect to these issues.

Defendant has now moved to dismiss the federal securities fraud count of the amended complaint on the grounds that it is time-barred by the applicable statute of limitations as a result of the Third Circuit's in banc opinion in *In re Data Access Systems Securities Litigation*.[5] In response, plaintiff does not contest that if the *Data Access* one-year rule is applied to its federal claim THEN it would be time barred. Instead, plaintiff contends that the *Data Access* rule should not be applied retroactively to this action.

---

ing companies), which in turn, is controlled by the Milikowsky brothers. The Milikowskys first learned of the Company by way of the fact that Jordan was a major vendor of the raw materials used by Prospect Industries at its manufacturing plant.

2. The annual audits of the Company were performed by the accounting firm of Weber, Lipshie & Co. ("Weber, Lipshie"), the defendant herein. It appears that Weber, Lipshie had performed the Company's annual audits during the period from 1969 (when the Company first went public) through 1981. The Milikowsky brothers contend that they relied upon the representations of these alleged recklessly performed audits in making their decision to purchase the Company.

3. For purposes of this motion, it is sufficient to note that the amendment provided that financial terms of the transaction were eased somewhat for the purchasers and that the purchasers agreed to release the sellers from the representations and warranties in connection with the financial documents (*e.g.,* the auditors' reports) provided them by sellers prior to the transaction.

4. It should be noted that the aiding and abetting count was dropped from the amended complaint.

5. And if the federal claim is found to be time-barred, Weber, Lipshie moves to dismiss the common law negligence count on the grounds that pendent jurisdiction should not be exercised over this aspect of the complaint.

**1152**

## II. DISCUSSION [6]

### A. Retroactivity—The *Chevron Oil* Test

■ In its simplest form, the question which remains before this Court is whether the Third Circuit's *Data Access* opinion should be applied retroactively in light of the three-part test articulated by the Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971):

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied [citation omitted], or by deciding an issue of first impression whose resolution was not clearly foreshadowed [citation omitted]. Second, it has stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." [Citation omitted]. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by

> a holding of nonretroactivity." [Citation omitted].

404 U.S. at 107–108, 92 S.Ct. at 355.

The application of the *Chevron Oil* retroactivity test with respect to *Data Access* is further facilitated by the Third Circuit's recent opinion in *Hill v. The Equitable Trust Company*, 851 F.2d 691 (3d Cir. 1988). As a threshold matter, the *Equitable Trust* court expressly stated that the majority of the Third Circuit in *Data Access* deferred the question of retroactivity:

> Although the judges of this court were unanimous that this federal statute of limitations should apply in section 10(b) and Rule 10b–5 cases, the majority [in *Data Access*] specifically declined to decide whether its holding would be retroactive.

*Equitable Trust*, at 695. *But see Data Access* slip op. at 98,249 (Seitz, J. dissenting) (under *Chevron Oil*, borrowed federal statute of limitation should be applied prospectively only). Although the *Equitable Trust* court concluded that "in the present litigation, at least two of the three *Chevron* factors counsel in favor of the general presumption of retroactivity and against the uncommon exception of prospectivity[,]" at 697, this Court must nonetheless independently apply the *Chevron Oil* factors to the facts of this case.

(1) *Clear Past Precedent.* With respect to the first *Chevron Oil* factor, the *Equitable Trust* Court noted that:

> waived its objections, the opinions of this court distinguish between the two categories of matters referred to magistrates.... Although we recognized that the majority of circuits hold otherwise, [footnote omitted] we ruled that a party who failed to object to a magistrate's report on an issue referred under subsection (B) has not waived its right in this court to the legal conclusions contained therein. [Footnote omitted].

828 F.2d at 1005–1006. *See also Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir.) (declining invitation to adopt waiver rule for dispositive issues), *cert. denied*, — U.S. ——, 108 S.Ct. 120, 98 L.Ed.2d 79 (1987). Accordingly, because dismissal pursuant to a statute of limitations is undeniably dispositive, this matter is properly before this Court.

---

**6.** As a threshold matter, plaintiff argues that defendant has not preserved its right to challenge the statute of limitations issue and that it is not now properly before this Court because defendant never appealed this aspect of the magistrate's decision to the district court. Regardless of whether defendant did in fact appeal the statute of limitations issue, a fact debated by the parties, this Court notes that in the Third Circuit the failure to object in a timely manner to dispositive rulings by a magistrate does not constitute a waiver of the right to object. *United Steelworkers of America v. New Jersey Zinc Co., Inc.*, 828 F.2d 1001, 1006 (3d Cir.1987). The *New Jersey Zinc* court went to great lengths to point out the differences between review of dispositive, as opposed to nondispositive, magistrates' rulings:

> When considering whether a party who has failed to object to a magistrate's ruling has

By the end of 1980, four judges from this court had considered the issue; two [*i.e.*, Gibbons, J. and Sloviter, J.] would have applied the state general fraud laws and two [*i.e.*, Seitz, J. and Weis, J.] would have used the Blue Sky statutes. Consequently the law in the [Third] [C]ircuit on this point could fairly be described as uncertain.

At 697. The *Equitable Trust* court was referring to the Third Circuit opinions in *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir.1979) [7] and *Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605 (3d Cir.1980).[8] Although both *Roberts* and *Biggans* reversed decisions in which the district court originally applied the state Blue Sky statute of limitations and instead applied the pertinent general fraud statute of limitations, neither case was decided by a unanimous court and both were accompanied by strongly worded dissents.

In *Equitable Trust*, the Third Circuit limited its analysis to the state of the law as it existed in 1979, when the plaintiff first learned of the possible fraud, and as it existed in 1982, when the plaintiff filed suit. Similarly, this Court must focus on the state of the law as it existed in 1982 and 1985; plaintiff first learned of the alleged fraud on or about December 9, 1982, and plaintiff filed suit in August of 1985.

The question remaining, therefore, is whether the extant state of the law significantly crystallized between 1980 and 1985 such that "clear precedent" was firmly established.

(a) *The Third Circuit.* The only other relevant Third Circuit decision after *Roberts* and *Biggans* during the time period in question is *Sharp v. Coopers & Lybrand*, 649 F.2d 175 (3d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982), in which:

> [P]laintiff, purchaser of a limited partnership interest, brought a Rule 10b–5 action against the accounting firm which had prepared an opinion letter dealing with tax treatment of investors. The court, following *Biggans*, found that there could not have been an action under the Pennsylvania Securities Act because defendant was not the seller of the securities. The only state remedy being one for common law fraud, the court held the common law fraud period of limitations to be applicable.

*Fickinger v. C.I. Planning Corp.*, 556 F.Supp. at 436.[9] Although not cited by the *Equitable Trust* court, the *Sharp* opinion, notwithstanding the fact that it was decided by a unanimous panel, does not appear to lend significant clarity to this "un-

---

**7.** *Roberts v. Magnetic Metals Co.* is succinctly explained by Judge Shapiro of the District Court for the Eastern District of Pennsylvania in *Fickinger v. C.I. Planning Corp.*, 556 F.Supp. 434 (E.D.Pa.1982):

> In *Roberts*, plaintiff a selling shareholder, bringing an action against the corporation, its merger partner and their broker, alleged material misrepresentations and omissions in connection with defendants' solicitation of shareholder approval of a merger. The Court of Appeals [per Judge Gibbons and a concurrence by Judge Sloviter; then Chief Judge Seitz dissented] held that such an action filed in New Jersey was governed by the six-year statute of limitations applicable to actions for common law fraud rather than the two-year statute provided by the New Jersey Uniform Securities Act.

556 F.Supp. at 436.

**8.** Judge Shapiro summarized *Biggans v. Bache Halsey Stuart Shields, Inc.* as follows:

> In *Biggans*, a Rule 10b–5 action against a broker for "churning," filed in Pennsylvania,

the Court of Appeals [per Judges Sloviter and Gibbons; Judge Weis dissented] held that the six-year statute of limitations applicable to actions for common law fraud governed rather than the one-year limitation of the Pennsylvania Securities Act. The Pennsylvania statute proscribes churning and the Pennsylvania Securities Commission can enjoin a broker's activities or subject it to criminal penalties, but the Pennsylvania statute grants a private remedy only against a buyer or seller, not against a broker. Therefore, the most analogous state action was not one under the Pennsylvania Securities Act but an action for common law fraud.

*Fickinger*, 556 F.Supp. at 436.

**9.** Interestingly, the Third Circuit in *Equitable Trust* cited to one of the related district court opinions filed on September 17, 1981 (*i.e., Hill v. Der*, 521 F.Supp. 1370 (D.Del.1981)), however, the *Equitable Trust* court did not refer to *Sharp* which was originally filed on April 28, 1981 and amended on June 5, 1981. It is not clear why the *Equitable Trust* court elided the *Sharp* decision.

certain" point of law. Unlike both *Roberts* and *Biggans*, which involved detailed analyses of the theories of applicability as between the fraud and blue sky limitations statutes, the *Sharp* court gave this issue only "abbreviated consideration." 649 F.2d at 191. The extent of the analysis in *Sharp* was thus:

> This Court has recently examined the applicable statute of limitations for rule 10b–5 case in two decisions. The first, [*Roberts*], held that a rule 10b–5 action arising in New Jersey would be governed by the six year statute of limitations for common law fraud rather than the statute applicable to actions under the New Jersey Uniform Securities Act. In [*Biggans*], we held that the six year statute of limitations for common law fraud, [footnote omitted] rather than the one year limitation in § 504 of the Pennsylvania Securities Act, applied to a rule 10b–5 action for "churning" that arose in Pennsylvania. The court reasoned that the Pennsylvania securities statute grants a private remedy to a buyer only against his seller. It concluded that an action against a broker would not lie under the statute, and that the most analogous state action was an action for common law fraud.

649 F.2d at 192 (citing *Biggans*, 638 F.2d at 610). The *Sharp* court, in applying the common law fraud statute of limitations, concluded that *Biggans* was not distinguishable because the defendant was not the seller and that a state securities action would not lie.

Accordingly, the uncertainty in the Third Circuit as of 1980 created by *Roberts* and *Biggans* is not substantially abated by the mere addition of *Sharp* in 1981. Thus, if it is fair to describe the law of the Third Circuit as uncertain in 1980, the same must have been as of 1985.

(b) *The District Courts.* During this relevant time frame, it appears that the only decision in the District of New Jersey was filed on May 10, 1982, by Judge Gerry in *Corson v. First Jersey Securities, Inc.,* 537 F.Supp. 1263 (D.N.J.1982). Judge Gerry aptly noted that "[t]he decision in *Biggans* relies heavily on the reasoning of *Roberts* and cannot be read separate and apart from that earlier precedent." 537 F.Supp. at 1266.[10] More importantly, in *Corson,* Judge Gerry acknowledged that he was faced with "the already convoluted task of ascertaining the appropriate limitations period, an important consideration to the dissenters in both *Roberts* and *Biggans.*" *Id.* at 1267. And in holding that the two-year statute of limitations of the New Jersey Uniform Securities Act was applicable in *Corson,* Judge Gerry went on to note that:

> [T]he Blue Sky law, by design, was not intended to preempt the field with respect to available remedies and does preserve common law causes of action. If the [*Biggans*] court had intended to hold that only the six year limitation applied, it would have done so in much clearer terms.

537 F.Supp. at 1266. Clearly, *Corson* stands for the proposition that within the District of New Jersey, no clear precedent existed during the time period in question.

Moreover, a survey of other district courts within the Third Circuit reaffirms the proposition that there existed no clear precedent with respect to the application of statutes of limitations in 10b–5 litigation. *See, e.g., Hill v. Der,* 521 F.Supp. 1370, 1382–1383 (D.Del.1981) (noting "narrowness" of *Roberts* and *Biggans* and "lack of firm consensus as to proper guidelines"); *Goodman v. Moyer,* 523 F.Supp. 35, 37 (E.D.Pa.1981) (selection of proper period of limitations is "confused and inconsistent body of law") (quoting *Biggans,* 638 F.2d at 612 (Weis, J., dissenting)).[11] And in ap-

---

**10.** It is interesting to note that *Corson,* as did *Equitable Trust,* cited *Roberts* and *Biggans,* but not *Sharp.*

**11.** Pennsylvania jurisdictions are faced with the added burden of determining which of two Pennsylvania limitations periods governs those

situations determined to be under the ambit of common law fraud. In 1976 Pennsylvania enacted a new Judicial Code which went into effect on June 27, 1978. *See Bernicker v. Pratt,* 595 F.Supp. 1034, 1035 (E.D.Pa.1984) (noting two-year limitations period under 42 Pa.Cons.

plying the general fraud limitations, the court in *Steinberg v. Shearson Hayden Stone, Inc.,* 598 F.Supp. 273 (D.Del.1984), stated:

> The Third Circuit has adopted neither the blue sky limitations period nor the common law fraud period as exclusively applicable to 10b–5 cases. Rather, it has taken a functional approach aimed at promoting the policy of repose of the forum state and the substantive federal policy advanced by the federal cause of action.

598 F.Supp. at 1276 (footnote omitted).

Notwithstanding the lack of clear precedent in the Third Circuit, however, district courts began following a rule-of-thumb that Blue Sky limitations are the "logical candidate for regulating 10b–5 claims." *Conley v. First Jersey Securities, Inc.,* 543 F.Supp. 368, 371 (D.Del.1982) (quoting *Hill v. Der,* 521 F.Supp. at 1383). The *Conley* court went on to note that this "presumption" was subject to one significant exception:

> If the underlying state Blue Sky law does not afford a civil damage action to remedy the behavior challenged by the 10b–5 claim and the plaintiff would be relegated to a common law fraud action for state relief, the courts must apply the fraud limitations provision to the 10b–5 action.

*Conley,* 543 F.Supp. at 371 (quoting *Der,* 521 F.Supp. at 368 (citing *Sharp,* 649 F.2d at 191–192)).

In the instant case, plaintiff maintains that this rule, as enunciated in *Conley,* constitutes clear precedent. And under the New Jersey Uniform Securities Act, N.J. Stat.Ann. § 49:3–71(e), which appears to provide a cause of action only as against sellers of securities, plaintiff claims that clear precedent existed upon which to base its reliance on the six-year common law fraud limitations period. The shortcoming of this argument, however, is that the premise of the *Conley* rule is based on the notion that:

> It is clear from [*Roberts* and *Biggans* ] that where a plaintiff has no remedy under the state's Blue Sky law, but the operative facts alleged in the complaint give rise to a complaint under the state's common law, it is the limitations period applicable to a common law claim rather than a Blue Sky period which governs federal claims under Rule 10b–5.

*Dofflemyer v. W.F. Hall Printing Co.,* 558 F.Supp. 372, 377 (D.Del.1983). *Dofflemyer, Conley,* and *Der* all rest squarely on the clarity of *Roberts* and *Biggans.* In *Equitable Trust,* however, the Third Circuit expressly stated that *Roberts* and *Biggans* were "uncertain." Plaintiff, therefore, argues for a so-called line of precedent which is lacking a foundation. Accordingly, as noted in *Equitable Trust,* this Court is not "convinced that *Data Access* signalled an abrupt change in clearly established law ... [and] the first of the *Chevron* criteria is [not] satisfied here." At 698.

(2) *Retrospective Operation.* As did the *Equitable Trust* court, this Court finds that "resolution of the second *Chevron* criteri[on]—whether retrospective operation would further or retard the rule's function —is neutral." At 698 (citing *Al—Khazraji v. St. Francis College,* 784 F.2d 505, 513 (3d Cir.1986), *aff'd,* — U.S. —, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987).

(3) *Risk of Inequitable Result.* In *Equitable Trust,* the Third Circuit concluded that the risk of producing inequitable results—the third *Chevron* factor—was plaintiff's weakest position. At 698. Unlike the present action, the Court in *Equitable Trust* noted that application of either the federal or the relevant state statute of limitation, led to the identical result—a limitations period of one year.[12]

However, in the instant action, plaintiff relied on the six-year general fraud statute

Stat.Ann. § 5524(3) and six-year period under § 5527(6)).

**12.** The district judge in *Equitable Trust* applied Maryland state law under the forum state's borrowing statute. The Fourth Circuit had clear precedent applying the one-year limitation as set forth in Maryland's Blue Sky law, Md.Corps. & Ass'ns. Code Ann. § 11–703(f), to a 10b–5 claim.

of limitations of New Jersey, N.J.Stat.Ann. § 2A:14–1. Clearly under the six-year statute, plaintiff's action is timely. On the other hand, *if* the two year Blue Sky limitation had been appropriate (and this Court recognizes that Magistrate Hedges, as affirmed by Judge Lechner, found it not to be), then plaintiff, which acquired knowledge of the alleged fraud in or about December of 1982, would have been untimely in bringing its action in 1985. In other words, the *effect* of the two-year New Jersey Blue Sky limitation would be the same as that of the one-year federal limitation borrowed in *Data Access*.

Therefore, notwithstanding the extensive amount of discovery already taken in this case, this Court looks with great significance to the comment in *Equitable Trust* that the state of the law as to which statute of limitations to apply was less than clear following the *Roberts* and *Biggans* decisions.[13] As noted in the analysis under the first of the *Chevron* factors, even in 1985 when plaintiff filed suit, due to the lack of clear precedence, there certainly existed the possibility that a court in this district *might* apply the shorter Blue Sky limitations period. Although, not identical on the facts, the rationale of *Equitable Trust* translates intact to this case. In short, this Court holds that it is not "Monday morning quarterbacking" to retroactively apply *Data Access* to this case.

■ Accordingly, this Court finds that plaintiff's federal 10(b) action is barred by the federal statute of limitations.

## B. Pendent Claims—The *Gibbs* Test

In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218

**13.** As already shown *supra* in section II(A)(1) of this opinion, the issue of uncertainty did not concern the question of whether to apply the federal or state statute of limitations, but rather which state statute to apply.

**14.** It should be noted, however, that *Rosado* expressly dealt with the issue of mootness, whereas *Gibbs* addressed the issue of insubstantiality. This distinction was further explained by the court in *Rosado:*

Unlike insubstantiality, which is apparent at the outset, mootness, frequently a matter be-

(1966), the Supreme Court, in a discussion of the theory of pendent jurisdiction, stated:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claim claims should be dismissed as well.

*Id.* at 726, 865 S.Ct. at 1139 (footnotes omitted). The *Gibbs* court, faced with a "substantial" federal claim "sufficient to confer subject matter on the [federal] court[,]" 383 U.S. at 725, 86 S.Ct. at 1138, and a state claim which derived from a "common nucleus of operative fact[,]" *id.*, commented that federal courts clearly had the power to hear pendent claims and the exercise of that power, albeit discretionary, was driven by "considerations of judicial economy, convenience and fairness to litigants[.]" *Id.* at 726, 86 S.Ct. at 1139.

Subsequently, in *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), the Supreme Court was faced with the question of whether the mooting of the constitutional claim (*i.e.*, the basis of federal jurisdiction), "removed not only the *obligation* but destroyed the *power* of a federal court to adjudicate the pendent claim." 397 U.S. at 402, 90 S.Ct. at 1212 (emphasis in original; footnote omitted). The Supreme Court rejected the proposition that loss of a jurisdiction-conferring claim *always* strips a federal court's power to hear pendent claims.[14] The court, in referring to *Gibbs*, noted that:

> yond the control of the parties, may not occur until after substantial time and energy have been expended looking toward the resolution of a dispute that plaintiffs were entitled to bring in a federal court.

397 U.S. at 404, 90 S.Ct. at 1214. The instant action appears to be a hybrid of *Gibbs* and *Rosado*. Clearly the statute of limitations is a "substantive" issue. However, in this case the timing of its application is closely analogous to that explained in the *Rosado* mootness analysis.

On remand the District Court correctly considered mootness a factor affecting its discretion, not its power, and balanced the policy considerations that have spawned the doctrine of pendency and the countervailing policy of federalism: the extent of the investment of judicial energy and the character of the claim. *Rosado,* 397 U.S. at 403, 90 S.Ct. at 1213 (citing *Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139).

In *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187 (3d Cir.1976), the Third Circuit acknowledged that "[p]endent jurisdiction is essentially a discretionary doctrine[.]" 540 F.2d at 195. The *Tully* court, in dismissing plaintiff's pendent claims because there was no standing under the federal 10b–5 claims, went on to note that:

> If it appears that the federal claim is subject to dismissal under Fed.R.Civ.P. 12(b)(6) or could be disposed of on a motion for summary judgment under Fed.R.Civ.P. 56, then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances.

540 F.2d at 196 (citing *Kavit v. A.L. Stamm & Co.,* 491 F.2d 1176, 1180 (2d Cir.1974)). Moreover, the *Tully* court, although it did not define "exceptional circumstances," it did so to great lengths to note that "substantial time [already] devoted to the case and the expense incurred by the parties" did not fall within the ambit of exceptional circumstances.[15]

Similarly, in *Weaver v. Marine Bank,* 683 F.2d 744 (3d Cir.1982), the Third Circuit, relying on the rationale of *Tully,* dismissed plaintiff's pendent claims upon the dismissal of all federal claims because:

[T]he primary justification for exercising pendent jurisdiction is missing if the substantial federal claim to which the state courts could be appended is no longer viable.

683 F.2d at 746.[16]

On the other hand, in *Cooley v. Pennsylvania Housing Finance Agency,* 830 F.2d 469 (3d Cir.1987), an opinion which discussed both *Tully* and *Weaver,* the Third Circuit concluded that notwithstanding the dismissal of the federal claims, extraordinary circumstances existed such that dismissal of the pendent claims would have amounted to an abuse of the district court's discretion. The *Cooley* court noted:

> It is clear that Cooley's state law claims would be extinguished by the running of the applicable Pennsylvania statute of limitations, a matter of extreme prejudice to Cooley.... If fairness to the litigants is a proper consideration under *Gibbs, supra,* we would find that a compelling injustice would result if this matter were dismissed here in toto.

830 F.2d at 476 (footnote omitted).[17]

■ Although not "inequitable" under the language of *Chevron Oil,* the application of the *Data Access* rule to this case is, in the estimation of this Court, an "extraordinary circumstance" under the reasoning of *Tully, Weaver* and *Cooley.* As did the court in *Cooley,* this Court will not now abide the total dismissal of plaintiff's action in federal court and possibly leave plaintiff without any forum because of the belated application of the statute of limitations. Even though mere time and money invested in federal court will not preserve pendent jurisdiction, this Court is sensitive to the peculiar procedural posture of this

---

**15.** The *Tully* court also went on to stress, however, that plaintiff would suffer no prejudice in the wake of the dismissal of the entire federal case because there existed a concurrent state action which was stayed pending resolution of the federal action. 540 F.2d 196–197.

**16.** Unlike *Tully,* and like the instant case, the plaintiff in *Weaver* had not filed a concurrent state action. However, the *Weaver* court was critically influenced by the fact that plaintiff's statute of limitations problem was entirely obviated by the fortuitous existence of a "sympathetic" Pennsylvania statute, 42 Pa.Cons.Stat.

§ 5103(b), in which the Pennsylvania state court willingly "accept[ed] jurisdiction over cases improvidently brought in the federal courts...." 683 F.2d at 748. It appears, however, that there does not exist a comparable statute in New Jersey.

**17.** Unlike *Weaver,* the *Cooley* court noted the absence of an applicable transfer provision under Pennsylvania law because of post–*Weaver* modification of transfer statute. 830 F.2d at 475 n. 2.

**1158**

case. Accordingly, at this time, defendant's motion to dismiss plaintiff's pendent claims is denied.[18]

### III. CONCLUSION

For all of the above-noted reasons, defendant's motion to dismiss plaintiff's federal securities actions (*i.e.*, Count II of the complaint) is hereby GRANTED with prejudice. With respect to plaintiff's pendent state law claims, defendant's motion to dismiss is hereby DENIED without prejudice to renew at such time as an action is initiated in state court.

An appropriate order is to be submitted forthwith by counsel for the defendant.

---

**18.** However, if an action is initiated in the Superior Court of New Jersey, this Court will readily entertain a renewed motion to dismiss, or in the alternative, to stay the action in federal court pending resolution in state court.