**Ralph A. HEINEMAN, Plaintiff,**

v.

**S & S MACHINERY CO., et alia, Defendants.**

**No. CV–86–3841.**

United States District Court, E.D. New York.

Feb. 8, 1989.

Brown & Wood by Samuel J. Abate, Jr., Brian Wille, New York City, for plaintiff.

Moses & Singer by Joel Sharrow, David Picker, New York City for defendants.

Fabricant Yeskoo & Colangelo by Alfred Fabricant, New York City for Amro Industries, Inc.

SIFTON, District Judge.

Plaintiff, Ralph Heineman, commenced this action on November 13, 1986, against various individual and corporate defendants alleging violations of Section 10(b) of the Securities Exchange Act of 1934, Sections 1962(a) and (c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), common law fraud, and breach of contract. This matter is now before the Court on the motion of defendants S & S Machinery Co., Amro Industries, Inc., Simon Srybnik, and Saul Waller for summary judgment dismissing plaintiff's federal securities fraud claim under § 10(b) of the Securities and Exchange Act of 1934. Jurisdiction is alleged to be conferred on this Court pursuant to Section 27 of the Securities and Exchange Act, 15 U.S.C. § 78aa, and principles of pendent jurisdiction.

The action arises out of the January 26, 1981 sale by Mr. Heineman to Amro Industries of an 80% interest in American Edelstaal, Inc. Plaintiff alleges that after acquiring a controlling interest in Edelstaal, defendants reneged on various promises they made prior to the transaction and fraudulently induced the sale through various alleged misrepresentations and omissions. Plaintiff additionally alleges that defendants subsequently appropriated Edelstaal's good will and business contacts, stripped the company of its assets, and forced Heineman to resign as president of the company.

Defendants moved for summary judgment and dismissal of plaintiff's claims in January 1987. On August 17, 1988, this Court dismissed (1) plaintiff's RICO claim; (2) plaintiff's derivative claim; and (3) certain defendants' initially named in the action, but otherwise denied defendants' motion. In October 1988, plaintiff filed a second amended complaint to conform the pleadings to the Court's rulings.

Plaintiff has subsequently conducted discovery from defendants taking several depositions. The present motion for summary judgment is addressed only to Count One of plaintiff's second amended complaint.

Plaintiff commenced his action five years and ten months after the date of the alleg-edly fraudulent transaction. Defendant states that plaintiff knew of the alleged fraudulent acts and scheme no later than October 1982, more than four years prior to his commencement of this action. Plaintiff does not contest this fact except to state that defendants repeated the misrepresentations at various times.

Defendants contend that plaintiff's Rule 10b–5 federal securities law claim is barred by the limitations period announced by the Third Circuit in *In re Data Access Systems Secur. Litigation,* 843 F.2d 1537 (3d Cir. 1988). Defendants' argument is premised on two steps. First, since plaintiff was not a resident of New York and plaintiff's cause of action accrued in New Jersey, New York's "borrowing" statute is applicable to the instant action. Second, defendants argue that the applicable New Jersey limitations period has been established in the *Data Access* case and must govern the instant action. In *Data Access,* the Third Circuit, sitting *en banc,* held that the statute of limitations provided by Congress in the express remedies provisions of the 1934 Securities Exchange Act applies to all actions implied under section 10(b) and Rule 10b–5. Specifically, the statute of limitations for federal securities fraud claims arising in New Jersey is now the earlier of one year from the date of discovery or three years from the transaction. *Id.* This action was commenced five years and ten months after the date of the alleged fraudulent sale transaction. Based on the undisputed facts regarding the date of the transaction and the date when plaintiff discovered the fraud, defendants argue that application of the limitations period established in *Data Access* bars plaintiff's claim.

Plaintiff responds that the New York borrowing statute is inapplicable here because plaintiff's claims accrued in New York. In addition, even if Heineman's claim is said to have accrued outside New York, plaintiff argues that the limitations period in *Data Access* cannot be used for the purposes of New York's borrowing statute. Plaintiff contends that, because *Data Access* is based on federal law, it cannot be "borrowed" since CPLR § 202 is

only for the borrowing of state, not federal, limitations periods. There is, however, no authority supporting such a contention, and such a construction is contrary to the express language of CPLR § 202. New Jersey has adopted the federal limitations period as its own, and thus that period has become the state's limitations period. Therefore, there is no merit to the plaintiff's argument on this point. Finally, plaintiff argues that, even if the limitations period announced in *Data Access* can be borrowed, it cannot be applied retroactively to bar the claim which plaintiff now maintains against defendants. Accordingly, plaintiff argues that the claim is governed by the relevant New York statute of limitations which requires that plaintiffs sue within six years from the time their cause of action accrued or within two years from the time the fraud was or, with reasonable diligence, should have been discovered, whichever period is longer. *See, e.g., Armstrong v. McAlpin*, 699 F.2d 79, 86–87 (2d Cir.1983); *Marathon Enterprises, Inc. v. Feinberg*, 595 F.Supp. 368 (S.D.N.Y.1984).

## DISCUSSION

Since section 10(b) of the Securities Exchange Act of 1934 does not contain an express statute of limitations period, the Second Circuit has adopted the rule that it will apply the most analogous limitations period of the forum state, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976); *Armstrong v. McAlpin, supra,* at 86–87, including that state's borrowing statute. The Second Circuit has not adopted the reasoning or the conclusion of *Data Access.* Therefore, defendants' contentions that the Second Circuit will, at some time in the future, adopt a federal statute of limitations period for claims under section 10 are unavailing. This Court is bound to follow the clearly established precedent of this circuit.

Under CPLR § 202, New York's borrowing statute, where the plaintiff is an out-of-state resident and the cause of action accrues outside New York, the Court must apply the shorter of its own statute of limitations or the statute of limitations of the jurisdiction where the claim arose. Whether New York's borrowing statute as articulated in § 202 of the CPLR is applicable to an action depends upon the place of residence of the plaintiff and the place where the cause of action accrued. Where these facts are disputed, it cannot be said that the borrowing statute applies as a matter of law since such facts are material to this decision. To avoid the borrowing statute completely, the plaintiff must have been a New York resident the day the cause of action accrued. *Cellura v. Cellura*, 24 A.D.2d 59, 263 N.Y.S.2d 843 (1965).

Although there was some initial confusion over how to determine where a cause of action accrued for purposes of the borrowing statute, the law in this circuit now clearly states that a plaintiff's cause of action in a claim for securities violations accrues where its economic impact was felt. *Stafford v. International Harvester Co.*, 668 F.2d 142, 147–50 (2d Cir.1981). *See Sack v. Low*, 478 F.2d 360, 365 (2d Cir.1973); *Maiden v. Biehl*, 582 F.Supp. 1209 (S.D.N.Y.1984). Previously, the federal courts had specifically framed the issue as requiring a choice between two tests:

"The problem ... is whether to apply the traditional conflicts rule that a cause of action in tort accrues at the place of injury or the modern conflicts approached adopted by the New York Court of Appeals in *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743 [191 N.E.2d 279] (1963). The *Babcock* approach focuses on which jurisdiction had the most significant interest in, or contact with, the subject matter of the litigation. *Id....* One group of cases follows *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir.1977), and *Sack v. Low*, 478 F.2d 360 (2d Cir.1973), which are read as establishing the rule that the place of injury determines where a cause of action accrues. Another set of federal cases holds that the grouping of contacts approach controls the question. *Haberman v. Tobin*, 466 F.Supp. 447 [ (S.D.N.Y.1979) ] *(dictum)*; *State Teachers Retirement Board v. Fluor*

*Corp.,* 84 F.R.D. 38 [(S.D.N.Y.1979)] (*dictum*); *Natural Resources Corp. v. Royal Resources Corp.,* 427 F.Supp. 880 [(S.D.N.Y.1977)]."

*Stafford, supra,* at 148.

Since *Stafford,* however, it is clear that the federal courts of the Second Circuit agree that it is most appropriate for a federal court applying New York law to apply the traditional place of injury test. The "grouping of contacts" approach to where a plaintiff's claim accrues was rejected in *Arneil v. Ramsey,* 550 F.2d 774, 779–780 (2d Cir.1977), and *Stafford. See Stafford, supra,* at 149; *Grosser v. Commodity Exchange, Inc.,* 639 F.Supp. 1293, 1300 (S.D.N.Y.1986), *aff'd without opinion,* 859 F.2d 148 (2d Cir.1988); *Kronfeld v. Advest, Inc.,* 675 F.Supp. 1449, 1457 (S.D.N.Y.1987). "The Second Circuit has made it clear that the choice of law principles based on grouping of contacts do not apply to borrowing statute analysis." *Maiden v. Biehl, supra,* at 1212.

Under the "place of injury" rule, a cause of action for fraud accrues where the loss occurs and the loss "is deemed to be suffered where its economic impact is felt, normally the plaintiff's residence." *Sack v. Low, supra,* at 366. The rule asks the practical question "who became poorer and where did they become poorer?" *Appel v. Kidder Peabody & Co. Inc.,* 628 F.Supp. 153, 156 (S.D.N.Y.1986). The location of the economic impact of the fraud need not necessarily be the location of the plaintiff's residence. The "court can properly consider all relevant factors in determining where the loss is felt." *Lang v. Paine, Weber, Jackson & Curtis, Inc.,* 582 F.Supp. 1421, 1425 (S.D.N.Y.1984); *Grosser, supra,* at 1300. It is thus appropriate for a Court to make factual inquiries when determining the situs of economic loss to consider, *inter alia,* where and how the securities were paid for; whether the alleged loss was reflected in accounts in offices maintained in New York; and where the securities were actually handled. *Id.; see Sack, supra,* at 368. If there are facts indicating that the loss may have been suffered in a place other than where plaintiff resides,

the Court may find that the claim did not accrue in the place of plaintiff's residence.

Summary judgment may be granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any disputed material facts, *Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 9 (2d Cir.1983), and the Court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Beacon Enterprise, Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983). To defeat a motion for summary judgment, however, the opposing party may not rest upon the conclusory allegations or denials set forth in the pleadings, but must set forth specific facts showing that there is no genuine issue for trial. Rule 56(e); *Schering, supra,* 712 F.2d at 9.

Here, plaintiff contends that his loss occurred through a sales agreement that was executed in New York and that consequently New York is where plaintiff felt the economic impact. At the closing, Mr. Heineman delivered to defendants while in New York the certificates representing 80% of his ownership interest in Edelstaal. Furthermore, plaintiff contends that at the time of the negotiations, where plaintiff alleges misrepresentations were made, he was a resident of New York. Heineman states that he no longer lived in his New York apartment after October 1980, but he continued to retain the lease on that apartment until the spring of 1981, after the date of the transaction in question. While the facts offered by plaintiff are not sufficient to establish conclusively that the place of injury was New York or that plaintiff may properly be considered a resident of New York during the relevant period, the allegations do raise material factual issues which must be explored and considered prior to determining the applicability of the borrowing statute as a matter of law.

Notably, a recent decision of the New York Court of Appeals held that "resident" as used in CPLR § 202 does not have the

same meaning as "domiciliary." The determination of whether a plaintiff is a New York resident, for purposes of CPLR § 202, turns on whether he has a significant connection with some locality in the state as the result of living there for some length of time during the course of a year. *Antone v. General Motors Corporation,* 64 N.Y.2d 20, 484 N.Y.S.2d 514, 473 N.E.2d 742 (1984). The court also duly observed that determining whether a plaintiff was a resident of New York is factual. Plainly, then, it is not the case that all material facts here are undisputed. Defendants cannot demonstrate that as a matter of law plaintiff's claim accrued in New Jersey.

■ Because there are material factual issues yet to be resolved pertaining to plaintiff's federal securities claim and the applicable statute of limitations, the Court denies defendants' motion for summary judgment.

■ Plaintiff argues that the *Data Access* holding should not be retroactively applied to bar Heineman's claim. Although in view of the remaining material factual issues yet to be resolved it may not be necessary to reach the issue of retrospective application, it seems clear that *Data Access* should be given retroactive effect.

In *Data Access,* the court specifically declined to rule upon the issue of whether the court's rulings should have prospective effect only, *Data Access, supra,* at 1550, although several subsequent cases have considered the issue.

The Supreme Court has set out three qualifications for making a decision prospective only. *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The first factor in *Chevron* counsels that a decision should not be applied retroactively if it establishes a "new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Chevron, supra,* at 106, 92 S.Ct. at 355 (citations omitted). Retroactive application of a new decision is not favored where plaintiff's suit was instituted prior to the new pronouncement and the

claim was timely under the then prevailing limitations period. *See Brown v. Foley,* 810 F.2d 55 (2d Cir.1987).

Accordingly, the Court must examine the state of the law on the date by which plaintiff should have discovered the alleged fraud, October 1982, and on the date when the suit was filed. *See Hill v. Equitable Trust Co.,* 851 F.2d 691, 697 (3d Cir.1988), *cert. denied sub nom. Data Controls North v. Equitable Bank Nat'l Assn,* ——— U.S. ———, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989). In October 1982, and at the time when Heineman filed suit in November 1986, the Third Circuit followed the practice of borrowing the most closely analogous state statute of limitations to apply to claims under the federal securities laws. In New Jersey, two alternatives were generally considered: the limitations period for common law fraud and that which applied to state Blue Sky law. A six-year limitations period applies to claims based on general fraud. *See N.J.Stat. Ann. § 2A:14–1* (West 1987). This was the limitations period which was applied to the particular circumstances involving federal securities claims in *Roberts v. Magnetic Metals Co.,* 611 F.2d 450 (3d Cir.1979), and *Biggans v. Bache Halsey Stuart Shields, Inc.,* 638 F.2d 605 (3d Cir.1980). The panel in these decisions, however, was decidedly not unanimous. There were dissents from both opinions which selected the state Blue Sky law, with a shorter limitations period than that for fraud, as a closer, and more appropriate analogy to federal security law claims.

*Hill v. Equitable Trust Co.,* 851 F.2d 691 (3d Cir.1988), was the first Third Circuit opinion to address the retroactive application of *Data Access.* That court noted that "[c]lear holdings on which plaintiffs could reasonably rely ... were absent when plaintiffs decided to begin this suit in 1982." *Hill, supra,* at 697. The law in the Circuit on this point "could fairly be described as uncertain." *Id. Data Access* was certainly a significant development in the law of the Third Circuit, but it cannot be said that it was "an issue of first impression whose resolution was not clearly

foreshadowed," *Chevron, supra,* 404 U.S. at 106, 92 S.Ct. at 355, nor was the decision an abrupt change in the clearly established law. *Hill, supra,* at 698. In *Prospect Purchasing Co., Inc. v. Weber, Lipshie & Co.,* 694 F.Supp. 1149 (D.N.J.1988), *Data Access* was applied retroactively. That court concluded that the law remained unclear as late as 1985, well after plaintiff's claims here accrued. Other decisions have similarly noted the uncertainty in Third Circuit law surrounding the appropriate statute of limitations for claims alleging violations of Rule 10b–5 and section 10(b). *Laven v. Price Waterhouse,* Civ. 88–380, letter op., at 4–5 (D.N.J. June 28, 1988). One court remarked that this uncertainty was only settled with the *Data Access* decision in 1988. *Schwartz v. Philadelphia National Bank,* 701 F.Supp. 92 (E.D.Pa. 1988). This Court agrees with the analysis of the above-cited decisions and finds that the first of the *Chevron* criteria is not satisfied here.

The second *Chevron* factor requires a court to "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Chevron,* quoting *Allen v. State Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1968). Previous cases have generally considered this factor as neutral. *Hill, supra,* at 698; *Prospect Purchasing, supra,* at 1155. Although barring plaintiff's claim at this juncture does not advance the broad remedial purpose behind the Securities Exchange Act of 1934, denial of the retroactive operation of the limitations period established in *Data Access* would not adversely affect the operation of that rule in appropriate cases. The competing considerations seem to balance each other out.

Finally, a court must weigh the inequity imposed by retroactive application. Here, the factual circumstances are decidedly different than those faced by the *Hill* court. In *Hill,* it was noted that the limitations period in *Data Access* is identical to the Maryland statutory provision adopted by the district court. Plaintiffs in *Hill* fared the same, whether the new *Data Access*

holding of the Maryland statute applied. Consequently, the Third Circuit concluded that this factor demonstrated plaintiffs' weakest position. *Hill, supra,* at 698. The situation now before this Court differs from *Hill* in that there has been no judicial determination that Heineman could rely on the six-year general fraud statute of limitations rather than the two year Blue Sky limitations period. *Cf. Prospect Purchasing, supra,* at 1156. Since the above analysis of the first *Chevron* factor demonstrates that *Data Access* did not reject established precedent in a manner that was clearly foreshadowed, plaintiff cannot successfully maintain he was entitled to rely on the law as it was formulated.

The minority of district court decisions that have refused to apply *Data Access* retroactively are easily distinguished from the instant case. Those opinions found the factual circumstances of the case at bar to be identical to prior cases that had made a determination as to the applicable statute of limitations. Thus, they concluded there was clear precedent upon which the plaintiffs in those cases could rely. Specifically, the district judge in two of those cases refused to apply *Data Access* retroactively to a Rule 10b–5 claim against an accounting firm because the court believed that *Sharp v. Coopers & Lybrand,* 649 F.2d 175 (3d Cir.1981), had announced the applicable limitations period for the very specific factual circumstances under consideration involving actions against *accountants* in *Pennsylvania.* See *Gruber v. Price Waterhouse,* 697 F.Supp. 859, 862 (E.D.Pa. 1988); *ITG, Inc. v. Price Waterhouse,* 697 F.Supp. 867, 869 (E.D.Pa.1988). Moreover, in so doing, these cases ignored the Third Circuit's statement in *Hill* that "clear holdings on which plaintiff could rely," *id.,* at 697, were absent prior to the *Data Access* decision. See *Bradford White Corp. v. Ernest & Whinney,* 699 F.Supp. 1085 (E.D. Pa.1988). In the present situation this Court concludes that there was no clear precedent in New Jersey for actions such as that of the plaintiff upon which he could have reasonably relied.

Plaintiff further argues that the decisions applying *Data Access* retroactively are distinguishable from the instant case as they involved claims of defrauded purchasers not sellers. Plaintiff contends that Heineman was a seller of securities. The distinction, however, is not controlling. Prior to the *Data Access* decision, the Third Circuit employed an *ad hoc* claim matching approach to choosing the appropriate statute of limitations in all Rule 10b–5 cases. The uncertainty of this approach was not mitigated by a clear seller/purchaser distinction. In addition, defendants argue that plaintiff was in fact a purchaser of securities in the transaction since he purchased stock in exchange for capitalization of his $160,000 loan to Edelstaal. This factual disagreement as to the mechanics of the transaction was brought before this Court on defendants' first motion. At that time, the Court noted that "there were disputed issues of fact" but made no findings or determinations. This factual dispute only serves to highlight the uncertainty surrounding the applicable statute of limitations prior to *Data Access* and indicates that plaintiff could not reasonably have relied upon any clear prior law.

Were the facts established at trial to demonstrate that New York's borrowing statute applies to this case, this Court would find it appropriate to apply *Data Access* retroactively as defining the applicable New Jersey statute of limitations.

Accordingly, for the reasons stated above, defendants' motion to dismiss Count One of plaintiff's second amended complaint is denied.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.