**CERES PARTNERS, Plaintiff,**

v.

**GEL ASSOCIATES, Gollust, Tierney and Oliver, Coniston Partners, Gollust & Tierney, Inc., Keith R. Gollust, Paul E. Tierney, Jr. and Augustus K. Oliver, Defendants.**

No. 89 Civ. 1092 (MP).

United States District Court, S.D. New York.

June 9, 1989.

Bangser & Weiss by Evan L. Gordon, New York City, for plaintiff.

Cleary, Gottlieb, Steen & Hamilton by Richard F. Ziegler, Michael S. Sommer, New York City, for defendants.

## OPINION AND ORDER

MILTON POLLACK, Senior District Judge.

This is a motion to dismiss as stale or insufficient a suit for damages based on claims asserted under §§ 14(d), 14(e) and 10(b) of the Securities Exchange Act of 1934 (the 1934 Act). Section 14(d) is a regulatory statute that requires a tender offeror to disclose certain information before going forward with a tender offer. Section 14(e) proscribes making false and misleading statements or omissions in connection with a tender offer; for tender offers it is analogous to the proscription of fraud in § 10(b) and Rule 10b–5 promulgated thereunder. These claims are under the 1934 Act and as such can be brought only in the federal court. 15 U.S.C. § 78aa.

For the reasons appearing hereafter the suit will be dismissed on the ground that the applicable statute of limitations expired before the claims were brought. The Court, therefore, need not consider defendants' contention that the Complaint fails to state a claim on which relief can be granted.

## The Parties

Plaintiff Ceres Partners ("Ceres") is an investment general partnership with its principal office and place of business in New Jersey, that acts as a broker-dealer and also engages in risk arbitrage investments for its own account. In the course of its risk arbitrage business it bought 102,100 shares of Gelco Corporation ("Gelco") common stock. Gelco had commenced a restructuring plan in August, 1986 under which the company announced a "self-tender" offer to buy back up to 3,000,000 of its shares. Ceres bought its Gelco stock "in anticipation" of the announced self-tender offer. Defendant Gollust, Tierney and Oliver ("GTO") is also a New Jersey partnership engaged in investment activities and is affiliated with all the other defendants named in the complaint.

On September 25, 1986, Ceres sold its Gelco stock to a broker acting for GTO's affiliate GEL Associates ("GEL") at $18.50 a share—50 cents a share more than the market price. On the same day, Ceres went short 29,700 shares for its own account to take advantage of the price.

After the close of the market on September 25, 1986, defendants announced a plan to acquire control of Gelco. GTO publicly reported that GEL had acquired 17.6% of Gelco stock, and that GTO was proposing a merger transaction to Gelco in which other stockholders would receive $22.50 per share for their stock. Gelco stock rose to over $22 a share the next day. The facts alleged to give rise to plaintiff's claims were publicly known, and known by plaintiff, as of September 25, 1986. Defendants duly filed a Schedule 13D with the SEC within the required 10–day period, describing their plans to acquire Gelco and disclosing their ownership of more than 5% of Gelco stock.

Plaintiff waited from September 25, 1986, [and from the filing of the Schedule 13D, ten days later], until January, 1989 before commencing this suit on claims it patently "discovered" in September or October, 1986—more than two years previously. Ceres seeks to recover: 1) the difference between the price of the Gelco shares it sold to GEL and the price Ceres would have received had the plan to seek control of Gelco been made known to the plaintiff, and 2) losses incurred in its short sales to GEL.

Ceres claims that GTO's purchases of Gelco stock on September 25 from Ceres and other stockholders constituted a *de facto* tender offer and were therefore subject to SEC rules governing tender offers, *viz* §§ 14(d) and 14(e). The Complaint's First Claim alleges that GTO was obligated to file, before the stock purchase from Ceres, a Schedule 14D–1 announcing its tender offer and the failure to do so violated Sections 14(d) and 14(e) of the 1934 Act. In its next claim, the Complaint asserts that defendants violated Rule 10b–5 by failing to disclose their intention to make a merger proposal to Gelco.

As a New Jersey resident, plaintiff's claims are untimely in this forum if they would be time barred had plaintiff sued in the District of New Jersey, plaintiff's home forum. Plaintiff may not "forum shop" for a longer New York limitary period, even if we were to assume there is a longer limitary period in this District.

## Applicable Limitary Period

The issues raised here require the Court to enter upon the morass of law surrounding the appropriate limitary period for implied causes of action under the Federal Securities Laws. Before addressing the merits of the arguments raised by the parties in this case, a brief survey of the morass and recent changes in it, is appropriate.

Claims under the Federal Securities Laws can be divided into two general categories: those based on provisions which expressly create liability and establish a time frame in which to bring a private right of enforcement; and those based on statutes and rules or regulations promulgated thereunder, where courts have implied a private right of action. Plaintiff's claims under §§ 10(b), 14(d) and 14(e) of the 1934

Act are based on an implied [1], rather than on an express right of action.

Because these implied rights of action were created by the courts and not Congress, by definition, there is no *statute* of limitations. "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985).

With 50 states, each having different statutes of limitations, the time for a plaintiff to bring suit based on an implied cause of action under the Federal Securities Laws may vary from state to state. The confusion and forum shopping created by looking to state law for the applicable limitary period has long been noted. *See*, 3 Loss, *Securities Regulation*, 1771–78 (2d ed. 1961), *Report of the Task Force on Statute of Limitations for Implied Actions*, 41 Bus. Law. 645 (1986), Loss, *Fundamentals of Securities Regulation*, 992–1003 (1988).

A proposed remedy for this problem was suggested by the American Law Institute in their proposed Federal Securities Code. Section 1727(b) thereof included a proposed express limitation on implied actions. The final proposal would have permitted actions brought within one year of constructive discovery of the fraud, with an absolute cut-off at 5 years. The first draft of the ALI Code borrowed the limitary period found in §§ 11 and 12 of the Securities Act of 1933 (1933 Act), 15 U.S.C. §§ 77k(a), 77*l* and §§ 9(e) and 18 of the 1934 Act, 15 U.S.C. §§ 78i(e), 78r(a)—one year from discovery, but no greater than 3 years from the transaction. Congress has not yet, however, adopted any time limit.

The confusion that arises from using state laws to supply the limitary period for federal securities law claims, led Professor Loss to ask:

> Meanwhile, with the 1933 and 1934 Acts so closely related, why not look to *their* statutes of limitations by way of analogy rather than to a variant state law? Would it not be eminently more consistent with the overall statutory scheme to look to what Congress itself did when it was thinking specifically of private actions in securities cases rather than to a grab-bag of more or less analogous state statutes?

Loss, *Fundamentals of Securities Regulation*, p. 1168–69 (1983).

Against this background, the Court of Appeals for the Third Circuit, en banc, decided *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.1988). With *Data Access*, the Third Circuit became the first federal appellate court to use analogous federal law, rather than state law, to determine the limitary period for § 10(b) actions. In doing so, it announced that it would apply the one year from discovery, but no greater than 3 years from the transaction rule, found in 15 U.S. C. §§ 77k(a), 77*l* and 15 U.S.C. §§ 78i(e), 78r(a), to § 10(b) and Rule 10b–5 actions.

Determining whether the limitary period has run on plaintiff Ceres' action, depends on whether the rule announced in *Data Access* applies to Ceres' claim.

a. *Second Circuit law on the applicable limitary period.*

The Second Circuit, to date, follows the traditional analysis for statutes of limitation applicable to violations of implied liability under the Federal Securities Laws. A Federal Court sitting in this district must look to the New York statutes, including the State borrowing statute, § 202 of the CPLR, for the limitary period. *Arneil v.*

---

**1.** The fact that an implied private right of action exists under § 10(b) is well established. *See, e.g., Superintendent of Ins. of the State of N.Y. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). Courts have also recognized a private right of action under § 14(e). *See, Piper v. Chris–Craft Industries, Inc.*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977) (this opinion recognizes a private right of action, although the Court found the particular plaintiffs there had no standing), *Dyer v. Eastern Trust & Banking Co.*, 336 F.Supp. 890 (D.Me. 1971). The parties, however, have not addressed, and this Court need not consider whether any such private right of action exists under § 14(d).

*Ramsey,* 550 F.2d 774, 779 (2d Cir.1977). Section 202, provides:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

Accordingly, it is incumbent on a federal court in this District to look to the law that would be applicable to these claims as if they were brought in federal court in New Jersey. That is not disputed herein.

In this case, we are dealing with federal causes of action that can be litigated only in a federal court [2] and perforce we must apply the rule of limitations as a federal court in New Jersey would apply it. The Third Circuit has spoken definitively on the limitary period for implied claims under the Federal Securities Laws in *In re Data Access Systems Securities Litigation,* 843 F.2d 1537 (3d Cir.1988).

Ceres contends this court to be consistent with the Second Circuit's direction that state law supply the limitary periods for implied actions under the Federal Securities Laws, may not use CPLR § 202 to borrow the federal limitary period set forth in *Data Access.* However, to use the New York borrowing statute, would be to follow the Second Circuit's direction that courts look to state law for the applicable limitary period. CPLR § 202 refers to the law of "the place without the state" and does not restrict reference to state laws only. Judge Sifton in *Heineman v. S & S Machinery Co.,* 707 F.Supp. 86 (E.D.N.Y.1989) reached the same conclusion on this issue, although in dicta:

Plaintiff contends that, because Data Access is based on federal law, it cannot be "borrowed" since CPLR § 202 is only for

the borrowing of state, not federal, limitations periods. There is, however, no authority supporting such a contention, and such a construction is contrary to the express language of CPLR § 202. New Jersey has adopted the federal limitations period as its own, and thus that period has become that state's limitations period.

*Section 14 Claims*

Ceres argues that even if *Data Access* applies under the borrowing statute to § 10(b) claims, it does not control the limitary period for § 14 claims. The Third Circuit in *Data Access* was presented only with claims under § 10(b) and Rule 10b–5. On that basis, Ceres contends the Court should look to an earlier Third Circuit holding, *Roberts v. Magnetic Metals Co.,* 611 F.2d 450 (3d Cir.1979), for the § 14 limitary period.

Ceres' argument misconstrues the Third Circuit's holdings in *Roberts* and *Data Access.* In *Roberts,* the court applied New Jersey's six-year statute of limitations for common law fraud to the plaintiff's claims under §§ 10(b) and 14(a). The *Roberts* court did not rule that the six-year statute of limitations was applicable to all claims asserted under § 14.[3] The court specifically cautioned:

The starting point ... for determining applicable state statutes of limitations is to inquire whether, assuming the operative facts alleged in the complaint, a state court would entertain an action for the relief sought....

611 F.2d at 452. The court went on to find that the facts alleged in the complaint would state a cause of action under state law for breach of fiduciary duty and common law fraud, and applied the six-year statute of limitations on that basis.

The procedure followed in *Roberts,* examining the factual allegations for each claim and finding the analogous state law

**2.** As already noted, § 27 of the 1934 Act, 15 U.S.C. § 78aa, gives federal courts exclusive jurisdiction over suits to enforce any liability under that Act.

**3.** The court in *Roberts* declined to apply the two-year statute of limitations from New Jersey's blue sky law because that law only gave a right of recovery to purchasers of securities. Roberts sold securities.

cause of action, was expressly criticized in *Data Access*. The Third Circuit rejected the past practice, concluding, "the case law in this court now suggests in section 10(b) and Rule 10b–5 actions ... the courts must select 'the *one* most appropriate statute of limitations for all civil [§ 10(b) and Rule 10b–5] claims.' " 843 F.2d at 1544 (emphasis in original). The Court of Appeals went on to hold that the federal scheme of limitations set forth in the Securities Acts (§§ 9, 18 and 29 of the 1934 Act, and § 13 of the Securities Act of 1933, 15 U.S.C. § 77m as amended by the 1934 Act) *viz,* one year after the plaintiff discovers facts constituting the violation, but no more than three years after such violation, is the proper period of limitations for a complaint alleging violation of § 10(b) and Rule 10b–5. Consequently, *Roberts* could supply the limitary period for § 14 claims only if the *Data Access* holding is ignored.

Finally, nothing in the Third Circuit's analysis of the appropriate federal statute of limitations suggests it would select a different period for §§ 14 and 10(b) claims. Instead, the court noted that the one-year —three-year rule applied to most express causes of action under the 1934 Act. Those courts that have addressed the statute of limitations under § 14 do so with the identical analysis that they apply in determining statutes of limitation for 10b–5 claims. No case of which we are aware has determined a different statute of limitations period for violations of § 14 and Rule 10b–5 of the type alleged here.

*Retroactive Application of Data Access*

■■■ *Data Access* was decided by the Third Circuit in April, 1988. The GEL defendants contend that the *Data Access* rule has retroactive effect and bars Ceres' cause of action which accrued on September 25, 1986; Ceres, however, asserts the rule should be applied prospectively only. The parties agree that under Third Circuit precedent, a rule will generally be applied retroactively, unless three principles indicate prospective application is appropriate:

(1) The holding must establish a new principle of law, either by overruling clear past precedent on which litigants

may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed;

(2) The merits and demerits in each case must be weighed by looking to the history of the rule in dispute, its purpose and effect, and whether retroactive operative will further or retard the rule's operation;

(3) Retrospective application must create the risk of producing substantially inequitable results.

*Hill v. Equitable Trust Co.,* 851 F.2d 691, 696 (3d Cir.1988), citing *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed. 2d 296 (1971). The Third Circuit in *Hill* concluded that, based on these considerations, *Data Access* should be applied retroactively to the § 10(b) claim raised there. The majority of district courts in the Third Circuit who have considered whether under the facts of their respective cases retroactive application of *Data Access* was in order, have applied the rule retroactively. *See, Gatto v. Meridian Medical Associates, Inc.,* 1989 WL 23125, 1989 U.S.Dist. LEXIS 1672 (D.N.J. Feb. 9, 1989); *Prospect Purchasing Co., Inc. v. Weber, Lipshie & Co.,* 694 F.Supp. 1149 (D.N.J.1988); *Kursman v. Wright/Egan and Associates,* 1988 WL 122127, 1988 U.S.Dist. LEXIS 12716 (E.D.Pa. Nov. 10, 1988); *Schwartz v. Philadelphia Nat'l Bank,* 701 F.Supp. 92 (E.D.Pa.1988); *Adelaar v. Lauxmont Farms, Inc.,* 695 F.Supp. 821 (M.D.Pa. 1988); *Bradford–White Corp. v. Ernst & Whinney,* 699 F.Supp. 1085 (E.D.Pa.1988); *McCarter v. Mitcham,* 693 F.Supp. 349 (W.D.Pa.1988); *contra, ITG, Inc. v. Price Waterhouse,* 697 F.Supp. 867 (E.D.Pa. 1988); *Gruber v. Price Waterhouse,* 697 F.Supp. 859 (E.D.Pa.1988).

As to the first factor, the court in *Hill* found that in 1980 when the cause of action arose, the law regarding the appropriate limitary period for § 10(b) claims was not clear. Ceres attempts to distinguish *Hill* on the basis that *Roberts* provided clear precedent on the limitary period applicable to § 14 claims. This argument, however, mischaracterizes the rule applied in *Roberts* as discussed above. That case did not hold the six-year limitary period applicable

to all § 14 claims, it merely indicated that period applied to the operative facts as alleged in the complaint.

Further, prior case law did not provide clear precedent on the limitation period applicable as to Ceres' claim. Prior cases generally applied the blue sky law's two-year period to claims where the plaintiff purchased securities and a six-year period where the plaintiff sold securities. *See, Data Access*, 843 F.2d at 1541. Counsel, during argument on this motion, acknowledged Ceres' was both a seller and a purchaser of securities. Ceres not only sold 90,000 of its own shares, it went short 29,700 shares, and thus was required to purchase shares in the market. These facts refute any claim that clear applicable precedent existed.

The second factor, whether retroactive application furthers the rule's purpose, the *Hill* court found to be neutral. Whether retroactive application will produce inequitable results, depends on the facts of the case.

The GEL defendants claim that retroactive application against Ceres is not inequitable. They note that although majority opinions prior to *Data Access* might support a six-year limitary period, that question was not free from doubt and a two-year period under the blue sky laws might also apply. Ceres' allowed the two-year period to lapse without filing suit, the GEL defendants argue, and that is not consistent with good faith reliance on existing law. Finally, they contend, dismissal of a suit where little time and money has been spent is not inequitable.

Ceres asserts that retroactive application would be inequitable because, as to the limitary period applicable to sellers of securities, *Data Access* overruled clear past precedent. Further inequity would result, Ceres claims, because the delay in commencing suit was solely the fault of prior litigation counsel who delayed in taking any action despite repeated requests. An affidavit by Faith Colish, Esq., Ceres' general counsel is submitted in support of this contention.

The claimed delay by counsel does not affect the determination of whether retroactive application of *Data Access* would be inequitable. No equities indicate why counsel did not file suit until January 11, 1989. Furthermore, Ceres was represented by counsel during the period of delay, who presumably was capable of discovering the relevant limitary period, or at least any uncertainty surrounding that period.

An analysis of the *Chevron* factors as they apply to this case, combined with the line of decisions from courts within the Third Circuit holding *Data Access* applies retroactively, indicates *Data Access* bars Ceres' claim here.

### Adoption of Federal Limitary Period

Ceres argues that if the Court accepts the *Data Access* holding that federal law should supply the limitary period for securities fraud actions, then the Court is free to choose for itself the most appropriate limitary period. Ceres suggests as an appropriate time bar the five year limitary period contained in the Insider Trading Sanctions Act of 1984, 15 U.S.C. § 78u–1, as amended and supplemented by the Insider Trading and Securities Fraud and Enforcement Act of 1988, adding 15 U.S.C. § 78t–1 (collectively the "ITA"). GEL defendants respond that the reasons which caused the Third Circuit to select a federal limitary period for securities law claims, might permit this Court to adopt such a rule, but deny that the ITA provides an appropriate limitary period in this case.

### a. Adoption of a Federal Rule

■ It would be inappropriate for a federal District Court to undertake to hold that the law of this Circuit requires or permits adoption of a federal limitary period for securities law claims that accrue in New York. Whatever the advisability of such a rule, the comment made by this Court fifteen years ago in *Mittendorf v. J.R. Williston & Beane, Inc.*, 372 F.Supp. 821, 830 n. 4 (S.D.N.Y.1974), applies equally today:

The pertinent admonition of Judge Learned Hand that it is not 'desireable for a lower court to embrace the exhil-

arating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant,' *Spector Motor Service, Inc. v. Walsh*, 139 F.2d 809, 823 (2d Cir.1944) (dissenting opinion), deters this Court from grounding its holding herein on the notion that a uniform period of limitation should be applied.

Clear Second Circuit precedent requires reference to New York law, including the borrowing statute, for determination of the appropriate limary period. New York's borrowing statute directs a court sitting in this District to apply the limary period as if it were sitting in the place outside the state where the cause of action accrued—New Jersey. A federal court sitting in New Jersey would be bound to follow the rule announced in *Data Access*. New York's borrowing statute requires this Court to do the same.

b. The Most Analogous Period

Even if the Court were free to adopt a federal limary period, the ITA's five year period suggested by Ceres is not an appropriate choice. As *Data Access* makes clear, the rationale for adopting a uniform federal statute evolves from the recent Supreme Court cases, *Agency Holding Corp. v. Malley–Duff & Associates*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) and *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The essential principle of *Agency Holding* is that a federal statute of limitations may be a more appropriate vehicle for the enforcement of federal law than a state statute where all claims arising out of a federal statute should be characterized in one way. 483 U.S. at 147, 107 S.Ct. at 2762, 97 L.Ed.2d at 128. The next step in the analysis is finding the one most appropriate statute by determining the similarities in purpose and structure between the cause of action to be enforced and the limary period to be adopted. 483 U.S. at 152, 107 S.Ct. at 2765, 97 L.Ed.2d at 131.

The right of action created by the ITA and its five year limary period do not provide a persuasive analogy to § 14 claims or to § 10(b) claims unrelated to insider trading. Congress passed the Insider Trading Sanctions Act of 1984 to expand the powers of the SEC to act against unlawful trading and tipping by persons in a variety of positions of trust and confidence who illegally acquired or illegally used material non-public information. *See,* H.Rep. No. 355, 98th Cong.2d Sess. p. 2–6 (1984) *reprinted in* 1984 U.S.Code Cong. & Admin.News 2274, 2275–79. The Insider Trading and Securities Fraud and Enforcement Act of 1988 created a new private right of action in persons who trade contemporaneously with an inside trader. 15 U.S.C. § 78t–1. The House Report for that legislation indicates that the Act explicitly limits the right to action to the narrow class of persons who trade contemporaneously with an inside trader, because other remedies available under the 1934 Act sufficiently recompense other types of fraud. H.Rep. No. 910, 100th Cong., 2d Sess. p. 26–28 (1988) *reprinted in* 1988 U.S.Code Cong. & Admin.News 6043, 6063–65. Instead, the private right of action under the ITA was intended to overturn court cases which precluded recovery for private plaintiffs where the violation of § 10(b) and Rule 10b–5 was premised on misappropriation of material non-public information. *Id.,* at 26, 1988 U.S.Code Cong. & Admin. News 6063.

Nothing in the complaint herein indicates that defendants "misappropriated" any non-public information in deciding to purchase Gelco stock. GEL, through its agents, purchased stock with knowledge of its forthcoming tender offer, and in furtherance of those plans. Clearly, GEL was not trading on illegally obtained or misappropriated information. Assuming that plaintiff has stated a claim for relief under §§ 10(b) and 14 of the 1934 Act, this claim is in no way analogous to an action under the ITA.[4]

---

**4.** Rule 14e–3, 17 C.F.R. § 240.214e–3, imposes a duty to disclose or abstain from trading upon any person who is in possession of material

information relating to a tender offer that another persons has taken a substantial step or steps to commence, analogous to the right of

According to plaintiff's theory, GEL defendants were required to give notice of the intended purchases by filing with the SEC the Schedule 14D–1 required of tender offerors. That type of claim is most closely analogous to a claim under Section 12(1) of the 1933 Act, 15 U.S.C. § 77*l* (1), which provides a remedy to those who buy stock from an issuer, who was obligated, but failed to file with the SEC a registration statement for such stock. Such a remedy is explicitly covered by the one-year/three-year period set out by § 13 of the 1933 Act, 15 U.S.C. § 77m.

It does not appear that the ITA offers a rational alternative possible analogy for implied claims under §§ 10(b) and 14. In any event, the Court is constrained to follow the selection by the Third Circuit of the one-year/three-year limitary period adopted in *Data Access.*

Accordingly, the complaint in this case must be and is dismissed as barred by the relevant statute of limitations.

SO ORDERED.

action under ITA. Rule 14e–3(c), however, exempts the tender offeror itself, or a person purchasing on its behalf, from the prohibition.