**SHAMROCK ASSOCIATES, Plaintiff,**

**v.**

**Dean L. SLOANE, Salvatore Alternative, Stanley Eiser, Brian Reach, and Peat, Marwick, Main & Co., Defendants.**

**No. 89 Civ. 6099 (RPP).**

United States District Court,
S.D. New York.

May 18, 1990.

Lankler Siffert & Wohl, Karen B. Shaer, Frank H. Wohl, New York City, for plaintiff.

Cahill Gordon & Reindel, George Wailand, Ellen Rosen, Amy Lefkof, John A. Shutkin, Associate Gen. Counsel, Peat Marwick Main & Co., New York City, for defendant Peat Marwick.

Olwine Connelly Chase O'Donnell & Weyher, Angelo Savino, New York City, for defendant Brian Reach.

Dornbush Mensch Mandelstam & Silverman, Karl Savryn, New York City, for defendant Dean L. Sloane.

McGuire & Tiernan, Arthur Nealon, New York City, for defendant Salvatore Alternative.

Greenfield Eisenberg Stein & Senior, Barbara Levitan, Norman Senior, New York City, for defendant Stanley Eiser.

## OPINION AND ORDER

ROBERT P. PATTERSON, JR.,
District Judge.

These are motions for summary judgment and to dismiss the complaint brought by all defendants pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 56. Although discovery has not commenced, the parties have presented the Court with certain documents outside of the pleadings; thus, the Court applies the summary judgment standard where appropriate. To grant a motion for summary judgment a court must find that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law because, after sufficient time for discovery, the non-moving party has failed to make a sufficient showing of an essential element of its case as to which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Background

Shamrock Associates, a limited partnership from New Jersey, seeks monetary damages for violations of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5; for violations of the common law of fraud; and for violations of the common law of negligent misrepresentation. *See* Amended Complaint (filed June 2, 1989). The defendants are former directors and officers of Prime Medical Services, Inc. (Prime Medical), a Delaware corporation whose common shares are traded on the New York Stock Exchange, and Peat, Marwick, Main & Co. (Peat Marwick), the independent auditor for Prime Medical.

Plaintiff alleges damages stemming from its purchases of Prime Medical stock, from April 1986 through April 1987, in reliance upon Prime Medical's fraudulent misrepresentations in financial statements filed with the SEC. As far back as May 1986, plaintiff filed a Schedule 13D with the SEC indicating that plaintiff was considering the possibility of a takeover of Prime Medical because the activities of Prime Medical's management was having a depressing effect on the market value of its shares. In that Schedule 13D, Shamrock stated that it believed the resources of Prime Medical were being wasted to benefit certain members of the Prime Medical's Board of Directors and expressed particular concern about Prime Medical's purchase of minority stock positions in two companies in which Prime Medical directors were principal stockholders and directors. A similar Schedule 13D was filed in January 1987 asserting that Prime Medical's management had engaged "in a continuum of ... self-dealing, self-entrenchment and self-enrichment." Ex. 7 to Wailand Aff.

In February 1987, Shamrock filed a complaint in the Southern District of New York in connection with its attempt to gain control of Prime Medical. In that action, Shamrock alleged that the defendants— some of whom were then Prime Medical's management and are defendants in this action—had violated Sections 10(b) and 13(d) of the Exchange Act, as well as the common law of tort and contract, by failing to disclose information pertinent to defendants' intentions to ward off Shamrock's attempt to gain control of Prime Medical. On March 2, 1987, Shamrock filed an amended complaint expanding on its 10(b) and 13(d) claims.

On June 30, 1987, Shamrock signed a Stock Purchase Agreement with Prime Medical. Under the Agreement, Shamrock sold the shares, which it had previously acquired, to Prime Medical at a price about twenty-five percent over market price, on

the condition that if Prime Medical was not acquired by the management group by December 30, 1987, then Prime Medical could exercise a put of the purchased shares to Shamrock, and Shamrock could exercise a call of such shares at that named price. Am.Comp. ¶ 76; Pl.Ex. G. In December 1987, Prime Medical exercised its put. On January 27, 1988, the parties signed a stipulation dismissing the then-pending lawsuit with prejudice. Ex. 3 to Wailand Aff. On January 28, 1988, Shamrock repurchased the Prime Medical stock pursuant to the Agreement, took control of the company, and gained access to Prime Medical's books and records. On February 2 and 8, 1988, the Honorable Miriam G. Cedarbaum signed orders dismissing Shamrock's lawsuit with prejudice.

Plaintiff alleges that after it took over Prime Medical, upon examination of the internal books and records, it discovered that the market value of Prime Medical's stock had been inflated by fraud and misrepresentations in financial statements: including, the concealment of a pattern of self-dealing; the concealment of substantial and material payments made, at least in part, for the benefit of defendants Sloane and Alternative, their families or affiliates; and material overstatements of the value of Prime Medical's investment in National HMO Corp. Am. Comp. ¶¶ 45, 63, 82.

On August 11, 1988, the plaintiff signed an agreement with Peat Marwick tolling the statute of limitations with respect to the claims asserted in this action.[1] On October 31, 1988, plaintiff filed suit against the individual defendants. On May 31, 1989, the tolling period between plaintiff and Peat Marwick expired. On June 2, 1989, plaintiff amended the complaint to add Peat Marwick as a defendant. On September 6, 1989, the Court rejected the management defendants' argument that they were entitled to summary judgment on the basis of the Stock Purchase Agreement's "release" provision. Pl.Ex. G, App. II. The Court held that there were genu-

ine issues of material fact as to whether the Agreement was obtained by fraud, defendants' intent to deceive and plaintiff's fulfillment of its duty of reasonable inquiry. On January 4, 1990, the Court heard oral argument on the motions currently at issue.

## Discussion

Defendants' motion is premised upon (1) the expiration of the statute of limitations, (2) the applicability of principles of res judicata, (3) the failure of allegations of misrepresentations in connection with purchases after the signing of the Stock Purchase Agreement to state a claim under Section 10(b), and (4) the failure to state a claim of negligent misrepresentation.

### I. Statute of Limitations

Defendants contend that plaintiff's Section 10(b) and Rule 10b–5 claim should be dismissed because of the expiration of the statute of limitations. Neither Congress nor the Supreme Court has designated a uniform limitations period for Section 10(b) actions. To determine the applicable statute of limitations, the Court must look for guidance to law of the forum state, New York. See *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976); *In re Data Access Systems Securities Litigation*, 843 F.2d 1537, 1540–41 (3d Cir.) (en banc), cert. denied sub nom., *Vitiello v. I. Kahlowsky & Co.*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988); *Stull v. Bayard*, 561 F.2d 429, 431 (2d Cir.1977), cert. denied, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); *Arneil v. Ramsey*, 550 F.2d 774, 779 (2d Cir.1977).

Defendants submit that the New York borrowing statute, CPLR § 202, requires that the New Jersey statute of limitations govern here. Both parties agree that the conditions precedent to invoking the law of New Jersey under the New York borrowing statute are (1) that the plaintiff is a resident of New Jersey and (2) that the

---

**1.** It is undisputed that the date on the tolling agreement should read "August 1988" rather than "August 1987."

cause of action accrued in New Jersey.[2] The principal place of business determines residency under CPLR § 202. *See McMahan & Co. v. Donaldson, Lufkin & Jenrette Securities Corp.*, 727 F.Supp. 833 (S.D.N.Y.1989) [hereinafter *McMahan II*]. Plaintiff concedes that it is a New Jersey resident. Tr. at 43 (Jan. 4, 1990) ("You have to have a plaintiff that is a New Jersey resident, which we have."); Ex. 6 to Wailand Aff., at 8 (SEC filing by Shamrock listing business address as New Jersey).

Plaintiff contends, however, that the action accrued in New York and not in New Jersey, because the stock was purchased on the New York Stock Exchange. Tr. at 44. This is contrary to the law of the Second Circuit which holds that a claim accrues in the state where plaintiff suffered the alleged injury. *Stafford v. International Harvester Co.*, 668 F.2d 142, 148–50 (2d Cir.1981); *Industrial Consultants, Inc. v. H.S. Equities, Inc.*, 646 F.2d 746, 747 (2d Cir.), cert. denied, 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981). The rule is that the place of injury in securities fraud cases is "normally the plaintiff's residence," because that is where the ultimate economic impact is felt. *See Sack v. Low*, 478 F.2d 360, 366 (2d Cir.1973); *Miller v. Grigoli*, 712 F.Supp. 1087, 1090 (S.D.N.Y. 1989) (reviewing recent decisions in the Southern District of New York ruling that residence is where securities fraud injuries occur). Accordingly, the New Jersey statute of limitations governs the Section 10(b) claim, because plaintiff is a New Jersey resident and the Section 10(b) action accrued in New Jersey. *See Ceres Partners v. GEL Associates*, 714 F.Supp. 679 (S.D.N.Y.1989); *see also McMahan & Co. v. Donaldson, Lufkin & Jenrette Securities Corp.*, Fed.Sec.L.Rep. (CCH) ¶ 94, 792, 1989 WL 131648 (S.D.N.Y.1989) [hereinafter *McMahan I*].

Recently the Third Circuit addressed the issue of what statute of limitations applies in a Section 10(b) action in the state of New Jersey. *See Data Access, supra.* The Third Circuit decided that the statute of limitations set forth in other sections of the federal securities law, *see* 15 U.S.C. §§ 77k(a), 77*l*, 78i(e), and 78r(a), was more appropriate for a Section 10(b) action than any available New Jersey statute of limitations. *Data Access*, 843 F.2d at 1550 (citing *DelCostello v. Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983)). Since a Section 10(b) claim can only be presented in federal court, the statute of limitations in New Jersey for a Section 10(b) action will always be derived from federal law under *Data Access.*

Plaintiff argues that although *Data Access* would control a federal court sitting in New Jersey, it should not control this Court. According to plaintiff, the New York borrowing statute requires that this Court borrow from a state statute, but does not permit this Court to borrow a federal statute of limitations. The contention of plaintiff has been presented previously in two district court cases in this circuit and been rejected both times. *Ceres Partners, supra; Heineman v. S & S Machinery Co.*, 707 F.Supp. 86, 87 (E.D.N.Y. 1989). Those courts reasoned that plaintiff's interpretation of CPLR § 202 is not supported by any authority and is "contrary to the express language of CPLR § 202." *Heineman*, 707 F.Supp. at 88. The Second Circuit directs district courts to look to CPLR § 202 which expressly requires that "the law of 'the place without the state' " be utilized in this case. *Ceres Partners*, 714 F.Supp. at 682 (quoting CPLR § 202). It is not inconsistent with the language of CPLR § 202 for the law of "the place without the state" to be derived from a federal statute. Accordingly, the statute of limitations as described in *Data Access* is applicable here.[3]

---

**2.** An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply. CPLR § 202. It is undisputed that the law of New York provides for a longer statute of limitations than the law of New Jersey.

**3.** The rule of *Data Access* is applicable retroactively, because pre-*Data Access* precedent was

The statute of limitations applicable here, as enunciated in *Data Access*, is: "one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation." 843 F.2d at 1550. The one year limit begins to run not only upon actual discovery but also once the plaintiff has "knowledge of the facts which in the exercise of reasonable diligence should have led to actual knowledge." *Stull v. Bayard*, 561 F.2d at 432; *see also Data Access*, 843 F.2d at 1545–46 (appropriating statute of limitations from 15 U.S.C. § 77m which states, in part, "no action shall be maintained to enforce any liability under section 77k or 77l(2) of this title unless brought within one year after discovery of the untrue statement or the omission, *or after such discovery should have been made by the exercise of reasonable diligence* ") (emphasis added); *Stafford v. Electronic Systems and Associates, Inc., supra* (interpreting *Data Access*'s one year limit to commence when discovery should have occurred); *Bradford–White Corp. v. Ernst & Whinney*, 699 F.Supp. at 1091 (same).

■ Plaintiff filed this suit against the individual defendants on October 31, 1988 and added Peat Marwick as a defendant on June 2, 1989. Pursuant to an agreement with Peat Marwick, the statute of limitations was tolled between Peat Marwick and Shamrock from August 12, 1988 through May 31, 1989. Plaintiff argues that its claim accrued on June 30, 1987 when the Stock Purchase Agreement was signed and that it could not have discovered a violation by any defendant until January 28, 1988 when it took control of Prime Medical and gained access to the internal books and records. Such a portrayal satisfies both the one and three year aspects of the statute of limitations.

Defendants take issue with plaintiff's contention that it could not have reasonably discovered a violation before January 28, 1988. According to defendants, this suit is time barred because plaintiff should have known at least over one year prior to the August 1988 tolling agreement—well over a year before the commencement of this suit—of the violations. Defendants assert that, as a matter of law, the availability to plaintiff of plenary discovery in the lawsuit filed on February 10, 1987 [hereinafter *Shamrock I* ], put plaintiff in a position where due diligence would have led to the discovery of the violations alleged in the current suit.

The leading Second Circuit case on plaintiff's duty to utilize discovery to reveal grounds for a subsequent action is *Klein v. Shields & Co.*, 470 F.2d 1344 (2d Cir.1972). There, the plaintiff had been involved in a prior suit involving a contract claim and waited eleven years before conducting any discovery. That discovery revealed knowledge which served as the basis for the securities fraud action in *Klein v. Shields*. The Second Circuit ruled that the statute of limitations on the fraud action began to run once the plaintiff could have commenced discovery in the prior suit. 470 F.2d at 1346–47.

There can be no dispute that the federal district court in *Shamrock* would have permitted plaintiff access to Prime Medical's internal books and records—the basis for the current allegations of fraud—under federal discovery procedures. The complaint and amended complaint in *Shamrock I* alleged that Prime Medical was depriving shareholders "of information they need to make decisions concerning their investment and the future of the company"; *see* Ex. 1 to Wailand Aff., at ¶¶ 30, 92, 93; Ex. 2 to Wailand Aff., at ¶ 33; and that the management were "entrenching themselves without regard to the interests of

not clear and because plaintiff cannot maintain that he has detrimentally relied on pre-*Data Access* caselaw. *See Hill v. Equitable Trust Co.*, 851 F.2d 691 (3d Cir.1988) (applying *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)), cert. denied sub nom., *Data Controls North, Inc. v. Equitable Bank*, 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989);

*Stafford v. Electronic Systems and Associates, Inc.*, No. 88–3490, 1989 WL 150007 1989 U.S. Dist. LEXIS 14727 (E.D.Pa. Dec. 8, 1989); *Ceres Partners*, 714 F.Supp. at 683–84; *Heineman v. S & S Machinery Co.*, 707 F.Supp. at 90–92; *Bradford–White Corp. v. Ernst & Whinney*, 699 F.Supp. 1085, 1089–91 (E.D.Pa.1988).

Prime's shareholders." Ex. 2 to Wailand Aff., at ¶ 88. The causes of action were based on Section 10(b) as well as Section 13(d) of the Securities and Exchange Act. Furthermore, Shamrock's counsel in *Shamrock I*, a law firm which included members of the Shamrock group, deposed management defendants Dean L. Sloane and Salvatore Alternative, during which investigation of much of the fraud alleged here was feasible. Under *Klein v. Shields*, however, the statute of limitations will only have begun to run if "[a]t that point in time [when discovery was available in the prior suit], at least the possibility of fraud [, as alleged in the subsequent suit,] should have been apparent to" plaintiff. 470 F.2d at 1347.

To determine whether the possibility of the misrepresentations alleged in this suit should have been apparent to plaintiff during *Shamrock I*, it is necessary to review the documentary evidence of Shamrock's knowledge and suspicions at the time when discovery was available in *Shamrock I*. On May 2, 1986, Shamrock filed a Schedule 13D stating that it

> believes the resources of the [Prime Medical] Company are being wasted to benefit certain members of the Company's Board of Directors. Of particular concern are two transactions involving the purchase by the Company of minority stock positions in two companies, the directors and principal stockholders of which are also directors of the Company..... Further, notwithstanding the Company's deteriorating earnings, ... management has prospered in each of the last three years with ever increasing salaries and benefits.

Ex. 6 to Wailand Aff. On January 28, 1987, Shamrock filed a second Schedule 13D, stating:

> On January 12, 1987, the Company announced an intention to pursue a merger with National HMO Corp. ("National HMO"). The Company shares the ownership of National HMO with, among others, certain of the Company's officers..... [I]f consummated, the National HMO merger would become one more item in a continuum of management self-

dealing, self-entrenchment and self-enrichment.

Ex. 7 to Wailand Aff. These Schedule 13D's show that before the filing of *Shamrock I* plaintiff purportedly knew of Prime Medical's alleged "continuum of management self-dealing, self-entrenchment and self-enrichment," and had particular suspicions concerning the nature of the National HMO investments.

In light of these Schedule 13D's, the possibility of several of the fraudulent acts alleged in this suit should have been apparent to a diligent counsel for Shamrock during the pendency of *Shamrock I*, from February 1987 through February 1988, or at least through June 30, 1987 when the Stock Purchase Agreement was signed. The Amended Complaint alleges that financial statements filed with the SEC from 1984 through October 1987 fraudulently concealed "a pattern of self-dealing, including substantial and material payments made, at least in part, for the benefit of Sloane and Alternative." Am.Comp. ¶¶ 45(g), 63(h), 82(i). In addition, the Amended Complaint alleges that the 1987 10K misrepresented the value of the National HMO investment and "disregarded the fact that the value of the investment had been permanently impaired." Am. Comp. ¶ 85(e). The Amended Complaint also alleges that Peat Marwick, during the period 1984 through October 1987, failed to detect and properly evaluate the undisclosed pattern of waste and self-dealing, of which the National HMO investment was an example. *See, e.g.,* Am.Comp. ¶¶ 130–32. These allegedly concealed acts should have been explored on discovery in *Shamrock I*. The Schedule 13D's, filed before the initiation of that action, specifically allude to the wasteful character of the National HMO transaction and management's continuum of self-dealing, self-enrichment and self-entrenchment.

Differences between the causes of action in *Shamrock I* and this lawsuit do not affect directly whether the statute of limitations began to run during the prior action. In *Klein v. Shields*, the Second Circuit held that a plaintiff in a prior contract

action should have conducted discovery related to a securities fraud action. The critical factor under *Klein v. Shields* is whether at the time when discovery was available in the prior suit, the possibility of fraud should have been apparent to a diligent attorney. The opportunities for discovery in *Shamrock I* coupled with the apparent knowledge of plaintiff at the time, as revealed in the Schedule 13D's, require this Court to follow *Klein v. Shields* and hold that the one year statute of limitations began to run in the Spring of 1987 as to allegations of the sort discussed above. Consequently those allegations concerning activities of that nature are time-barred if they occurred during or prior to the first two quarters of 1987. The other allegations are not time-barred because they refer to acts which either arose after the dismissal of *Shamrock I* or are not clearly connected to possibilities of which plaintiff should have been aware at the time of *Shamrock I.*

## II. *Res Judicata*

■ The doctrine of res judicata precludes a claim when the following elements are satisfied: (1) there has been a final judgment on the merits; (2) the parties are identical to or in privity with the parties in the first action; (3) the causes of action are identical. *In re Teltronics Services, Inc.,* 762 F.2d 185, 190 (2d Cir.1985); *Colonial Acquisition Partnership v. Colonial at Lynnfield,* 697 F.Supp. 714, 718 (S.D.N.Y. 1988). It is undisputed that Judge Cedarbaum signed orders of dismissal with prejudice in February 1988, thereby constituting a final judgment. It is also undisputed that all of the parties in that action are identical to or in privity with the parties in this suit, except for Peat Marwick.[4]

Res judicata may insulate Peat Marwick in this action if, in the case before Judge Cedarbaum, its " 'interests were adequately represented by another vested with the authority of representation.' " *Amalgamated Sugar Co. v. NL Industries, Inc.,* 825 F.2d 634, 640 (2d Cir.1987) (quoting *Expert Electric Co. v. Levine,* 554 F.2d 1227, 1233 (2d Cir.), cert. denied, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977)), cert. denied sub nom., *Rothenberg v. Amalgamated Sugar Co.,* 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987). In *Cahill v. Arthur Andersen & Co.,* 659 F.Supp. 1115, 1120–23 (S.D.N.Y.1986), aff'd, 822 F.2d 14 (2d Cir.1987), the court surveyed cases analyzing whether an accounting firm was in privity with its corporate clients for res judicata purposes. The court concluded that when the claims in the first and second action are identical, then res judicata applies when the accounting firm's corporate clients are sued in the first suit and the accounting firm is sued in the second suit. 659 F.Supp. at 1123. Accordingly, whether res judicata protects Peat Marwick by virtue of its privity with the defendants in the first action, depends on whether the claims in the first and second action were identical.

In the Second Circuit, two actions are identical if the facts underlying the transactions in both actions are the same. *Expert Electric,* 554 F.2d at 1234; *Colonial Acquisition,* 697 F.Supp. at 720. Factors to be considered include whether "the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *NLRB v. United Technologies Corp.,* 706 F.2d 1254, 1260 (2d Cir.1983). Peat Marwick concedes that the first action was premised upon defendants' nondisclosure in Schedule 13D's of "ownership patterns," while the present action is premised upon defendants' nondisclosure in 10K and 10Q forms "of the problems with accounts receivable and of the milking of the company." Tr. at 25. However, according to defendants, the cases are identical because some of the same purchases triggered both causes of action.

The identicalness of purchases is insufficient to qualify the entire actions as identical.[5] The facts of the alleged violations are

---

**4.** Although Stanley Eiser was not a named defendant in the first action, plaintiffs do not

dispute that Mr. Eiser was in privity with defendants in the first action.

**5.** The Court also notes that not all of the pur-

sufficiently different in both content and form so that res judicata is inappropriate. Peat Marwick is correct that the first action was premised upon concealment of "ownership patterns" for the purpose of influencing a takeover attempt, while the present action is premised upon concealment of "problems with accounts receivable and of the milking of the company" for purposes of inflating the price. The distinct acts of fraud in the two suits cannot be deemed identical simply because they were in connection with the some of the same stock purchases. The commonality of "several operative facts" is insufficient to support a finding of identity. *NLRB v. United Technologies Corp.*, 706 F.2d at 1259–60. The two actions are not identical here because they are founded on plaintiff's allegations of different acts by defendants, different types of conduct by defendants and different effects of defendants' acts. *Id.* at 1260. Accordingly, the application of res judicata is inappropriate because the claims are not identical.

III. *Section 10(b) Claims Based Upon Reports Filed After the Signing of the Stock Purchase Agreement*

■ Defendant contends that there are no grounds upon which relief can be granted for plaintiff's Section 10(b) claim that the 10K Report filed on October 12, 1987 was fraudulent. An allegation of a Section 10(b) violation must aver fraud or misrepresentation "in connection with the purchase or sale of any security." *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 735, 95 S.Ct. 1917, 1925, 44 L.Ed.2d 539 (1975). Defendant argues that due to the signing of the Stock Purchase Agreement in June 1987, there was no purchase made in connection with the representations in the 10K Report filed in October 1987. To the contrary, the Amended Complaint alleges that the January 1988 purchase, although pursuant to the June 1987 Stock Purchase Agreement, was only made after "Shamrock reviewed and relied on the [October] 1987 Form 10K." Am.Comp. ¶ 88. The Amended Complaint also alleges, "Shamrock complied with the terms of the Stock Purchase Agreement because it was unaware of the fraudulent nature of Prime's financial statements." Am.Comp. ¶ 93.

■ According to defendants, these allegations are insufficient to connect the October 1987 10K Report with the January 1988 purchase, because, as a matter of law, the date of the signing of the Stock Purchase Agreement was the significant date for the purposes of the January 1988 purchase. The standard for determining when a purchase occurs under Section 10(b) is straightforward: "the time when the parties to the transaction are committed to one another." *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 891 (2d Cir. 1972). If the purchaser enters into a contract to purchase, but reserves the power to terminate prior to full performance, then each actual purchase is viewed as a distinct investment decision and the date of the contract does not mark the date of the subsequent purchases. *See Dept. of Economic Development v. Arthur Andersen & Co.*, 683 F.Supp. 1463, 1475 (S.D.N.Y. 1988); *Hill v. Equitable Bank*, 599 F.Supp. at 1072.

Under the terms of the Stock Purchase Agreement, "the [Prime Medical] Company had the right, subject to certain conditions, to put the shares purchased from Shamrock back to Shamrock." Am.Comp. ¶ 76. "By letter dated December 16, 1987, Prime's Board exercised the Put/Call option under the June 30, 1987 Stock Purchase Agreement with Shamrock and put the shares to Shamrock." Am.Comp. ¶ 91. Shamrock then repurchased the shares pursuant to the Agreement in January 1988. Since Shamrock was obligated by the terms of the Stock Purchase Agreement to make the January 1988 repurchase, it would appear that the January 1988 repurchase was completed upon the signing of the June

chases at issue in this suit are identical to the purchases in *Shamrock I*. A large part of this current action stems from a repurchase of shares, pursuant to a Stock Purchase Agree-

ment. The Stock Purchase Agreement was signed and the repurchase was consummated after the Amended Complaint was filed in *Shamrock I*.

1987 Agreement and therefore the January 1988 repurchase was required and was unconnected in any way whatsoever with the 10K filed in October 1987. In light of the Stock Purchase Agreement, there appears, at first glance, to be no basis for the allegation that "Shamrock reviewed and relied upon the 1987 Form 10K before agreeing to repurchase its shares on or about January 28, 1988...." Am.Comp. ¶ 88. Arguably, the Amended Complaint fails to state a 10(b) claim in connection with the 1987 10K.

However, the 10(b) allegations of the Amended Complaint can also be read so as to connect the 1987 10K and the January 1988 repurchase. Some of the alleged fraudulent misrepresentations in the 1987 10K pertain to alleged acts which are not barred by the statute of limitations and which occurred prior to signing of the Stock Purchase Agreement. Am.Comp. ¶ 82. If the 1987 10K had not been marred by the alleged fraud, then Shamrock might have had sufficient information and grounds in October 1987 for voiding the Stock Purchase Agreement for fraud in the inducement and thereby voiding its commitment to make the repurchase. Viewed in this way, the complaint states a 10(b) cause of action by alleging that Shamrock reviewed and relied on the 1987 Form 10K before considering whether its commitment to repurchase stock under the Stock Purchase Agreement was voidable for fraud in the inducement. Accordingly, the Section 10(b) claims based upon reports filed after the signing of the Stock Purchase Agreement and before the January 1988 repurchase are not dismissed.

## IV. *Negligent Misrepresentation*

■ Although the parties do not address the choice of law issues presented by the common law claim of negligent misrepresentation, it is undisputed that either New York or New Jersey law governs. The courts of neither New York nor New Jersey set forth an absolute rule against negligent misrepresentation claims against accountants and individual directors and officials. *See Ossining Union Free School District v. Anderson LaRocca Anderson,*

73 N.Y.2d 417, 541 N.Y.S.2d 335, 338, 539 N.E.2d 91, 94 (N.Y.1989); *Rosenblum, Inc. v. Adler,* 461 A.2d 138 (N.J.1983). The Complaint states a claim under both states' caselaw, because it portrays the plaintiff as not simply a member of the investing public, but as a distinct party whom Peat Marwick and the management defendants actually knew was relying on their representations when making significant investments. Accordingly, at this stage there is still a genuine issue of material fact as to whether defendants engaged in common law negligent misrepresentation.

### Conclusion

Defendants' motions to dismiss and for summary judgment are granted in part and denied in part, as set forth above. Counsel for all parties are to attend a pretrial conference on June 1, 1990 at 9:00 A.M.

IT IS SO ORDERED.